RECORD NO. 13-1613

IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

**ROLF KAMP,**

*Plaintiff-Appellant,*

v.

**EMPIRE FIRE AND MARINE
INSURANCE COMPANY,**

*Defendant-Appellee.*

---

**OPENING BRIEF OF PLAINTIFF-APPELLANT**

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA AT ROCK HILL**

Chad A. McGowan
Ashley White Creech
McGOWAN, HOOD & FELDER, LLC
1539 Healthcare Drive
Rock Hill, South Carolina 29732-000
(803) 327-7800 (Telephone)
(803) 328-5656 (Facsimile)
cmcgowan@mcgowanhood.com
acreech@mcgowanhood.com

Counsel for Plaintiff-Appellant

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _____          Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)

_____

 who is _____, makes the following disclosure:
         (appellant/appellee/amicus)


1.      Is party/amicus a publicly held corporation or other publicly held entity?      YES      NO


2.      Does party/amicus have any parent corporations?                          YES      NO
        If yes, identify all parent corporations, including grandparent and great-grandparent
        corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                          YES      NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?       YES     NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      YES     NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                        YES     NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____        Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE

**************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____              _____
       (signature)                                                   (date)

# TABLE OF CONTENTS

Corporate Disclosure Statement

Table of Authorities……………………………………………… iii

Statement of Jurisdiction………………………………………… 1

Statement of the Issues…………………………………………… 2

Statement of the Case……………………………………………. 3

Statement of Facts………………………………………….... 5

Summary of Argument…………………………………………… 8

Standard of Review……………………………………………… 10

Discussion of the Issues

    I.    **THE DISTRICT COURT ERRED IN RULING THAT, AS A MATTER OF LAW, THE SUPPLEMENTAL POLICY UNAMBIGUGOUSLY EXCLUDED UNINSURED MOTORIST COVERAGE** …...... 11

    **A. The Supplemental Policy is subject to multiple interpretations** …………………….. 11

    **B. The District Court improperly applied North Carolina law governing the identification of a possible insurance contract ambiguity** …. 13

    **C. A reasonable insured could interpret the Supplemental Policy to include uninsured motorist coverage** …………………………. 21

    **D. Since a reasonable insured could interpret the Supplemental Policy to include uninsured motorist coverage, the Policy's**

**purported uninsured motorist coverage exclusion must be construed against Empire** …    23

**II.    NORTH CAROLINA'S MOTOR VEHICLE AND FINANCIAL RESPONSIBILITY ACT REQUIRES THE SUPPPLEMENTAL POLICY TO INCLUDE UNINSURED MOTORIST COVERAGE** ……………………    25

Conclusion …………………………………………………..    28

Request for Oral Argument………………………………….    28

Certificate of Compliance

Certificate of Filing and Service

# TABLE OF AUTHORITIES

### Cases

Akzona, Inc. v. American Credit Indemnity Co. of New York,
322 S.E.2d 623 (N.C. App. 1984) ………………………………… 14

Allstate Insurance Co. v. Stilwell, 639 S.E.2d 107 (N.C. App.
2007) …………………………………………………………… 16

Bissette v. Auto-Owners Insurance Co., 703 S.E.2d 168
(N.C. App. 2010) ……………………………………………….. 15

Blis Day Spa, LLC v. Hartford Insurance Group., 427 F. Supp.
2d 621 (W.D.N.C. 2006) ……………………………………….. 10

Bray v. North Carolina Farm Bureau Mutual Insurance Co.,
462 S.E.2d 650 (N.C. 1995) …………………………………… 26

CACI International, Inc. v. St. Paul Fire & Marine Insurance
 Co., 566 F.3d 150 (4th Cir. 2009) …………………………… 13

Catawba Valley Machinery Co. v. Aetna Insurance Co., 185
S.E.2d 308 (N.C. App. 1971) …………………………………… 24

Charbonnages de France v. Smith, 597 F.2d 406 (4th Cir.
1979) ………………………………………………………….... 10

Cowell v. Gaston County, 660 S.E.2d 915 (N.C. App. 2008) ………. 15

Crandell v. American Home Assurance Co., 644 S.E.2d 604
(N.C. App. 2007) ……………………………………………….. 24

Cunningham v. Middle Georgia Mutual Life Insurance Co.,
601 S.E.2d 382 (Ga. App. 2004) ……………………………….. 21

Drye v. Nationwide Mutual Insurance Co., 487 S.E.2d 148
(N.C. App. 1997)………………………………………………… 24

Ex parte United Services Auto Association, 614 S.E.2d 652
 (S.C. App. 2005) ……………………………………………….. 21

Flynt v. Life of South Insurance Co., 718 S.E.2d 343 (Ga.
App. 2011) ……………………………………………………     21

Gaston County Dyeing Machine Co. v. Northfield Insurance
 Co., 524 S.E.2d 558 (N.C. 2000) …………………………………     24

Gaunt v. John Hancock Mutual Life Insurance Co., 160 F.2d
599 (2nd Cir. 1947) ……………………………………………     21

General Accident Fire & Life Assurance Corp. Ltd. v.
Akzona, Inc., 622 F.2d 90 (4th Cir. 1980) ……………………………     10

Heil v. United Ohio Insurance Co,, 584 N.E.2d 19 (Ohio App.
1990) …………………………………………………………..     16

Jennings v. University of North Carolina, 482 F. 3d 686
(4th Cir. 2007) ……………………………………………………     10

Joyner v. Nationwide Insurance, 266 S.E.2d 30 (N.C. App.
1980) ………………………………………………………….. .     17, 24

Long v. Adams, 312 S.E.2d 262 (S.C. App. 1984) ……………………     13

Lynn v. Lynn, 689 S.E.2d 192 (N.C. App. 2010) ……………………...     14

McCoy v. Coker, 620 S.E.2d 691 (N.C. App. 2005) …………………..     14

McLeod v. Nationwide Mutual Insurance Co., 444 S.E.2d
487 (N.C. App. 1994) …………………………………………………     13, 15

Medical Mutual Insurance Co. of North Carolina v.
American Casualty Co. of Reading, Pennsylvania., 721 F.
Supp. 2d 447 (W.D.N.C. 2010) …………………………………………     24

Moore v. Hartford Fire Insurance Co. Group, 155 S.E.2d
128 (N.C. 1967) ……………………………………………………     26

North Carolina Counties Liability & Property Joint Risk
Management Agency v. Curry, 662 S.E.2d 678 (N.C. App.
2008) ……………………………………………………….. 15

North Carolina Farm Bureau Mutual Insurance Co. v. Stox,
412 S.E.2d 318 (N.C. 1992) …………………………………………… 13, 23

Pierce v. Ford Motor Co., 190 F. 2d 910 (4th Cir. 1951) …………… 10

Register v. White, 599 S.E.2d 549 (2004) ………………………….. 15, 16

Simmons v. Poe, 47 F.3d 1370, 1378 (4th Cir. 1995) ………………. 10

Simpson v. Prudential Insurance Co. of America, 177 A.2d
417 (Md. 1962) ……………………………………………………….. 21

Southeast Airmotive Corp. v. U.S. Fire Insurance Co., 337
S.E.2d 167 (N. C. App. 1985) …………………………………………… 17

Sprake v. Leche, 658 S.E.2d 490 (N.C. App. 2008) …………………. 15

State Farm Mutual Auto Insurance Co. v. DeHaan, 900 A.2d
208 (Md. 2006) ………………………………………………….. 20

Stockton v. N.C. Farm Bureau Mutual Insurance Co., Inc.,
532 S.E.2d 566 (N.C. App. 2000) ……………………………….. 18

Stovall v. Stovall, 698 S.E.2d 680 (N.C. App. 2010) ………………… 14

Sutton v. Aetna Casualty & Surety Co., 382 S.E.2d 759
(N.C. 1989) ……………………………………………………….. 25

Trophy Tracks, Inc. v. Massachusetts Bay Insurance Co., 673
S.E.2d 787 (N.C. App. 2009) ………………………………………… 16

Wachovia Bank & Trust Co. v. Westchester Fire Insurance
Co., 172 S.E.2d 518 (N.C. 1970) ……………………………….. 15, 24

v

## <u>Statutes and Court Rules</u>

Fed. R. App. P. 4 …………………………………………………..          1

Fed. R. Civ. P. 56 ………………………………………………….          10, 14

N.C.G.S. § 20-279.21 …………………………………………          26, 27

N.C.G.S. § 58-36-1(1) …………………………………………..          27

## STATEMENT OF JURISDICTION

Appellant Rolf Kamp filed common law breach of contract and bad faith claims against Appellee Empire Fire and Marine Insurance Company ("Empire") in the York County Court of Common Pleas on February 27, 2012. The motor vehicle accident underlying Mr. Kamp's claims occurred in South Carolina. Mr. Kamp is a German citizen and resident and Empire is a Nebraska corporation with its principal place of business in Illinois. Empire noticed removal of Plaintiffs-Appellant's suit on March 30, 2012. The Notice asserted jurisdiction under 28 U.S.C. § 1332 since Mr. Kamp and Empire have diverse citizenship and the amount in controversy exceeds $75,000.

On January 25, 2013, the District Court filed an order granting Empire's Motion for Summary Judgment and denying Mr. Kamp's Motion for Partial Summary Judgment. Mr. Kamp filed a timely Motion to Alter or Amend Judgment pursuant to Federal Rule of Civil Procedure 59. The Motion to Alter or Amend Judgment was denied and Appellant complied with the Federal Rules of Appellate Procedure by filing a Notice of Appeal on May 8, 2013. See Fed. R. App. P. 4(a)(4). The order was a "final decision[] of the district court" and this Court has jurisdiction over Appellant' appeal of the orders. 28 U.S.C. § 1291.

1

## <u>STATEMENT OF THE ISSUES</u>

1. Whether a reasonable person in Rolf Kamp's position could reasonably interpret an insurance policy with declarations listing "Uninsured/ Underinsured Motorist Coverage" and a "$1,000,000 Combined Single Limit" for that coverage as providing uninsured motorist coverage; and

2. Whether the North Carolina Motor Vehicle and Financial Responsibility Act requires the policy to include uninsured motorist coverage regardless of the policy's contents.

## **STATEMENT OF THE CASE**

Rolf Kamp filed breach of contract and bad faith claims against Empire following Empire's refusal to pay uninsured motorist benefits in satisfaction of a $2.5 million judgment Mr. Kamp obtained against an uninsured at-fault driver whose vehicle struck the rented motorcycle on which Mr. Kamp was riding on a South Carolina highway. Hours before the collision, Mr. Kamp obtained multiple varieties of insurance coverage at the North Carolina dealership from which he rented the motorcycle. Mr. Kamp filed suit against Empire in the York County, South Carolina Court of Common Pleas on February 27, 2012.

Empire filed a Notice of Removal and Answer on March 30, 2012. After several months of discovery and pretrial procedure Mr. Kamp moved for partial summary judgment on November 1, 2012. Empire moved for summary judgment on all claims on December 3, 2012. Both motions centered on whether an Empire policy covering Mr. Kamp's motorcycle provided underinsured motorist coverage or whether the policy was ambiguous regarding this coverage. The issues raised in the motions were fully briefed by the parties, oral argument was held on January 16, 2013, and the issues were submitted to the District Court for Consideration.

On January 25, 2013, the District Court granted Empire's summary judgment motion on all claims and denied Mr. Kamp's motion. Mr. Kamp filed a timely Motion to Amend Judgment alleging the District Court erred in applying

3

North Carolina law on the construction of insurance policy exclusions. The Motion to Amend Judgment was denied on April 11, 2013, and Mr. Kamp filed a timely Notice of Appeal on May 8, 2013.

## STATEMENT OF FACTS

Rolf Kamp, a German citizen, traveled to the United States in March 2011 to visit friends living in South Carolina. J.A. 357, lines 16-20. Since Mr. Kamp had a birthday during his American vacation, he decided to rent a motorcycle and enjoy a road trip through the Appalachian Mountains. J.A. 351, lines 4-14. On April 8, 2011, Mr. Kamp met with a representative from R&K Harley Davidson Inc. d/b/a Harley Davidson of Charlotte ("R&K") to select/test the motorcycle he was to rent and to sign the required paperwork. J.A. at 360, line 14 – 361, line 10. Mr. Kamp was presented with a "H.D. of Charlotte Motorcycle Rental Agreement." J.A. at 361, line 19 – 362, line 1. The Agreement referenced an owner's motor vehicle liability policy providing minimum limits liability coverage and minimum limits uninsured and underinsured motorist coverage only where required by applicable state law. J.A. at 21

The Agreement also offered the renter the option to purchase additional insurance coverage. Id. Mr. Kamp told the R&K representative that he wanted "full coverage" on the motorcycle (J.A. at 352, lines 20-23) and initialed the Agreement signifying his intent to purchase "Personal Accident and Personal Property Insurance" and "Supplemental Liability Insurance." J.A. at 21. On the "Declarations for Rental Operator," Empire listed the limits of liability for the supplemental coverage Mr. Kamp purchased. J.A. at 44. The Supplemental Rental

5

Liability Insurance Mr. Kamp purchased included uninsured/underinsured motorist coverage with a combined single limit of $1 million. Id. Mr. Kamp paid the premium for these coverage and received a "Supplemental Liability Insurance Summary." J.A. at 40-41. Mr. Kamp did not receive a full copy of the policy, any endorsements, or any certificates of insurance associated with the policy.

Later that same day, Mr. Kamp left R&K and was driving in South Carolina when a vehicle driven by Tonya Sheets turned left in front of Mr. Kamp and struck Mr. Kamp's motorcycle. J.A. at 16, ¶ 10. Mr. Kamp was severely injured in the accident, incurred significant medical expenses, and suffered other damages as a result of the collision caused by Ms. Sheets. J.A. at 16, ¶¶ 10-12. Ms. Sheets' liability insurance policy had lapsed due to nonpayment of premiums, and she was an uninsured driver when she caused the collision injuring Mr. Kamp. J.A. at 50. Empire paid Mr. Kamp $30,000 in uninsured motorist benefits (North Carolina's minimum limit) under the owner's motor vehicle liability policy. J.A. at 16, ¶ 11, J.A. at 32, ¶ 11. Mr. Kamp accepted this payment while maintaining that he was due up to the policy limit for the uninsured/underinsured motorist coverage provided by the Supplemental Liability Insurance he purchased. J.A. at 16, ¶ 11.

Mr. Kamp filed suit against Ms. Sheets in the York County Court of Common Pleas for the damages suffered in the accident. J.A. at 7-10. Ms. Sheets failed to appear and defend the suit, and the court entered a $2.5 million default

6

judgment in Mr. Kamp's favor. J.A. at 28-29. Empire refuses to tender the limits

(minus the $30,000 Mr. Kamp has already received) of the SLI policy for the

uninsured motorist coverage Mr. Kamp purchased as indicated on the Declarations.

In February 2012, Mr. Kamp filed suit against Empire for breach of the SLI

insurance contract and for the company's bad faith failure to pay benefits due Mr.

Kamp under the policy's terms. J.A. at 13-20.

## **SUMMARY OF ARGUMENT**

Rolf Kamp purchased the "full coverage" of insurance for the motorcycle he rented from R&K on April 8, 2011. He initialed the proper area of the Rental Agreement and paid all required fees for SLI coverage. The Supplemental Policy issued by Empire included Declarations defining the policy's coverage and coverage limits. In clear language toward the center of the Declarations page, SLI coverage is shown to include "Uninsured/Underinsured Motorist Coverage" with a "$1,000,000 Combined Single Limit" for bodily injury.

When Mr. Kamp was severely injured by a collision caused by an uninsured driver, Mr. Kamp obtained a $2.5 million default judgment against the at-fault driver and looked to Empire to pay his claim for the UM coverage he purchased when he rented the motorcycle. Empire breached its insurance contract and acted in bad faith by refusing to pay the claim made in keeping with the Declarations' plain language. Empire contends that SLI coverage is excluded for North Carolina rentees like Mr. Kamp based on an exclusion provision and a complex policy structure including various endorsements and a certificate of insurance issued to R&K. Empire's position either ignores the Declarations' inescapable language or implicitly acknowledges the Supplemental Policy is ambiguous in that it grants coverage in one provision and removes it in another.

Empire is responsible for ensuring unambiguous policy language since Empire alone drafts the policy and profits from collection of its premiums. The Supplemental Policy is susceptible to multiple interpretations in the mind of an objectively reasonable insured including a view that the Declarations provide UM coverage for Mr. Kamp's losses Therefore, the policy is "ambiguous" as that term is defined by North Carolina law and must be read to provide UM coverage. The purported UM exclusion in this ambiguous policy is also inoperative and the District Court erred in ruling in Empire's favor on the parties' competing motions for summary judgment.

## STANDARD OF REVIEW

This Court reviews a district court's granting of summary judgment *de novo* in the light most favorable to the non-moving party. See Jennings v. Univ. of N.C., 482 F. 3d 686, 694 (4th Cir. 2007); Simmons v. Poe, 47 F.3d 1370, 1378 (4th Cir. 1995). Accordingly, the Court must consider the pleadings and all allegations and determine whether there is a genuine issue of material fact to be submitted to a trier of fact. Fed. R. Civ. P. 56(c). A Court may not "try the case in advance by summary judgment." Pierce v. Ford Motor Co., 190 F. 2d 910, 915 (4th Cir. 1951).

Where an insurance policy ambiguity creates a genuine issue of material fact as to the parties' intent, then summary judgment must be denied and the case must proceed to trial. Blis Day Spa, LLC v. Hartford Ins. Group., 427 F. Supp. 2d 621 (W.D.N.C. 2006)(citing Gen. Accident Fire & Life Assurance Corp. Ltd. v. Akzona, Inc., 622 F.2d 90 (4th Cir. 1980)). In reviewing the District Court's summary judgment order, an appellate court "must assess the evidence as forecast in the documentary materials before the district court in the light most favorable to the party opposing the motion" and accept the non-movant's version of all that is in dispute. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).

10

## DISCUSSION OF ISSUES

**I. THE DISTRICT COURT ERRED IN RULING THAT, AS A MATTER OF LAW, THE SUPPLEMENTAL POLICY UNAMBIGUGOUSLY EXCLUDED UNINSURED MOTORIST COVERAGE.**

**A. The Supplemental Policy is subject to multiple interpretations.**

The District Court granted summary judgment to Empire on Appellant's breach of contract and bad faith claims finding the policy unambiguously excluded coverage for Kamp's losses. J.A. at 431. It is clear from the pleadings and memoranda to the District Court that the parties have two very different interpretations of the policy and the availability of uninsured motorist ("UM") coverage under its terms.

Empire refers to a Supplemental Policy containing a master policy, state-specific endorsements, and certificates of insurance issued to various Harley Davidson dealerships across the country. Empire issued the Supplemental Policy to Harley Davidson Financial Services, Inc. and R&K became an insured through a Certificate of Insurance attached to the larger policy. J.A. at 53-54. The Supplemental Policy allows motorcycle renters to enroll in three coverage parts by initialing the appropriate area of the Rental Agreement and paying the required daily fee. A renter could select: (1) supplemental rental liability insurance ("SLI"); (2) personal accident coverage; and (3) personal property coverage. J.A. at 21. Empire points to a provision of the master policy purporting to exclude UM and

11

underinsured motorist coverage. Additionally, Empire reads the policy to exclude UM coverage except where the coverage is added by a state-specific endorsement. See J.A. at 216-22. Empire also claims R&K's Certificate of Insurance does not include UM coverage.

Mr. Kamp interprets the Supplemental Policy differently. When Mr. Kamp spoke with R&K representatives and completed the Rental Agreement, he asked for, paid for, and received all available insurance coverage on the motorcycle including SLI. SLI provided $1 million in liability coverage and, as clearly stated in the Declarations, also provided up to $1 million in UM coverage. J.A. at 44. The Certificate of Insurance R&K held does not include the terms "uninsured/underinsured motorist coverage." J.A. at 45-46. However, Mr. Kamp could still acquire UM coverage in initialing the SLI portion of the Rental Agreement presented to him at R&K because the Supplemental Policy, as clearly indicated in the Declarations, makes UM coverage available. While R&K's Certificate of Insurance indicates $1 million in "Excess Auto Liability" coverage, the Certificate neither explicitly nor implicitly excludes the coverage provided in the Declarations including the UM coverage provided therein. J.A. at 45. Additionally, the Certificate is not a part of the Supplemental Policy according to Empire's statement of the policy's composition. Empire limits the Supplemental Policy to (1) Declarations; (2) Common policy conditions; and (3) one or more

coverage parts. J.A. at 93. Similarly, the North Carolina endorsement does not explicitly or implicitly exclude the UM coverage clearly granted by the Declarations. See J.A. at 216-22.

### B. The District Court improperly applied North Carolina law governing the identification of a possible insurance contract ambiguity.

After considering the policy language and the varying interpretations discussed above, the District Court found no ambiguity in the policy. If it had, then the Court would have been required by North Carolina law to resolve that ambiguity in Appellant's favor.[1] N.C. Farm Bureau Mut. Ins. Co. v. Stox, 412 S.E.2d 318, 321 (N.C. 1992). Summary judgment in Mr. Kamp's favor would have been appropriate. Instead, the District Court failed to properly apply North Carolina law governing the identification of insurance policy ambiguities and it erred in finding that, as a matter of law, the policy unambiguously excluded UM coverage.

An insurance policy is ambiguous if its language "is susceptible to different, and perhaps conflicting, interpretations." McLeod v. Nationwide Mut. Ins. Co., 444 S.E.2d 487, 492 (N.C. App. 1994). Accordingly, summary judgment on the

---

[1] South Carolina choice of law rules apply to this action. See CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co., 566 F.3d 150 (4th Cir. 2009)(federal court sitting in diversity applies forum state's choice of law rules). South Carolina courts apply the substantive law of where the contact was made. Long v. Adams, 312 S.E.2d 262 (S.C. App. 1984). The parties agree the insurance contract at issue here was entered in North Carolina when Mr. Kamp signed the rental agreement at R&K.

13

ambiguity issue was only appropriate if the evidence in the record presented "no genuine issue" as to whether the policy, taken as a whole, was even "susceptible" to "different…interpretations." Id.; see also Fed. R. Civ. P. 56(a). A court's review of an insurance policy for a possible ambiguity must consider the unique facts of the case in which the policy is applied. McCoy v. Coker, 620 S.E.2d 691, 694 (N.C. App. 2005). North Carolina courts examine the disputed policy's provisions as well as "the length and complexity of the policy" in search of a potential ambiguity. Akzona, Inc. v. Am. Credit Indem. Co. of N.Y, 322 S.E.2d 623, 627 (N.C. App. 1984). As applied to this case, summary judgment required the specific finding that Appellant's interpretation was one to which the policy's language was not even "susceptible." This finding was not supported by the evidence, and the District Court erred in granting Empire's motion.

North Carolina law specifically defines the way in which a court is to determine whether an insurance policy is ambiguous. "Whether or not the language of a contract is ambiguous is a question for the court to determine. In making this determination, words are to be given their usual and ordinary meaning and all the terms of the agreement are to be reconciled if possible." Stovall v. Stovall, 698 S.E.2d 680 (N.C. App. 2010)(citing Lynn v. Lynn, 689 S.E.2d 192 (N.C. App. 2010)). "In order for an ambiguity to exist, the language of an insurance policy provision must be 'fairly and reasonably susceptible to either of the constructions

14

for which the parties contend.'" <u>Bissette v. Auto-Owners Ins. Co.</u>, 703 S.E.2d 168, 171 (N.C. App. 2010) (quoting <u>Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.</u>, 172 S.E.2d 518, 522 (N.C. 1970)). In other words, an ambiguity exists if the policy language "is susceptible to different, and perhaps conflicting, interpretations." <u>McLeod</u>, 444 S.E.2d at 492.

While the parties' disagreement over the meaning of insurance policy language does not establish that the language is ambiguous, "[t]he fact that a dispute has arisen as to the parties' interpretation of the contract is some indication that the language of the contract is, at best, ambiguous." <u>N.C. Counties Liability & Prop. Joint Risk Mgmt. Agency v. Curry</u>, 662 S.E.2d 678, 680 (N.C. App. 2008). For insurance policies, "[a]n ambiguity can exist when, even though the words themselves appear clear, the specific facts of the case create more than one reasonable interpretation of the contractual provisions. In interpreting the language of an insurance policy, courts must examine the policy from the point of view of a reasonable insured." <u>Sprake v. Leche</u>, 658 S.E.2d 490, 492 (N.C. App. 2008)(quoting <u>Register v. White</u>, 599 S.E.2d 549, 552 (2004)). If the evidence raises a question of fact as to the reasonable interpretation of insurance policy language, then summary judgment must be denied. <u>Cowell v. Gaston County</u>, 660 S.E.2d 915, 920 (N.C. App. 2008)(refusing summary judgment where evidence

"raises at least a question of material fact concerning [party's] reasonable understanding of the coverage").

North Carolina law requires its courts to specifically consider a reasonable insured's likely interpretation of the disputed language when ruling on the existence of an ambiguity. If a court is to conclude the policy is unambiguous, then it must provide specific reasons why an objectively reasonable insured could not interpret the disputed language differently than the insurer. See Trophy Tracks, Inc. v. Mass. Bay Ins. Co., 673 S.E.2d 787, 790 (N.C. App. 2009)(finding policy unambiguous only after considering reasonable insured and concluding "[w]e do not find that a reasonable person would understand" the language as party claimed). A court must conduct its analysis within the context of what "a reasonable person would think" when reading an insurance policy's often tangled language. Allstate Ins. Co. v. Stilwell, 639 S.E.2d 107, 109 (N.C. App. 2007). A policy is ambiguous if the court finds "it would not be unreasonable for a policyholder to conclude" the policy means something very different than what the insurer interprets it to mean. Register 599 S.E.2d at 556 (quoting Heil v, United Ohio Ins. Co., 584 N.E.2d 19, 21-22 (Ohio App. 1990)). The "determinative question" the District Court was required to address was "whether a reasonable person in the position of the insured, from reading the policy, would believe the policy provided coverage." Strother, 370 S.E.2d at 84.

In <u>Southeast Airmotive Corp. v. U.S. Fire Insurance Co.</u>, 337 S.E.2d 167, 169 (N. C. App. 1985), the court identified an ambiguity after determining a reasonable insured would read one portion of an aircraft liability insurance policy to grant coverage another portion purported to exclude. From <u>Southeast Airmotive</u> it is clear that a court examining an insurance policy for a possible ambiguity must ask: Would a "reasonable person in the position of plaintiff, as a purchaser of insurance…have understood" the Declarations to grant UM coverage? <u>Id.</u> This question probes the likely understanding of the policy's language by an objectively reasonable man in Mr. Kamp's position. Thus, it is irrelevant whether Mr. Kamp actually read the Declarations or, if he had, whether he personally believed the Declarations provided the coverage at issue. It is equally irrelevant that Empire claims, from the position of the insurer, that the Declarations do not grant UM coverage. Empire's repeated claims that providing UM coverage was not its intent should not bear on the ambiguity question because "the insurer's intent is not the proper focus of inquiry." <u>Strother v. N.C. Farm Bureau Mut. Ins. Co.</u>, 370 S.E.2d 82, 84 (N.C. App. 1988)(citing <u>Joyner v. Nationwide Ins.</u>, 266 S.E.2d 30 (N.C. App. 1980)).

The hypothetical objectively reasonable man in the insured's position is the point of view from which the court must view the Declarations' language. This rule of construction is sensible given the realities of how insurance policy language

arises. Here as in almost every other instance, "the insurance company prepared the policy and chose the language." Stockton v. N.C. Farm Bureau Mut. Ins. Co., Inc., 532 S.E.2d 566, 567 (N.C. App. 2000). Interpreting an insurance contract from an objectively reasonable insured's position works as a public policy rule by incentivizing insurers to consider the reasonable man's likely understanding of the policy language the insurer unilaterally crafts. Through its ambiguity interpretation rules, North Carolina law places the onus on an insurer to draft its policies using clear and understandable language even at the expense of the expedience of a single policy applicable across the country. Furthermore, deeming the Supplemental Policy ambiguous in this case poses no threat to the viability of nationwide policy schemes like Empire's. Drafting reasonably clear Declarations for North Carolina renters and renters from each of the other jurisdictions where Harley Davidson has dealerships is feasible without imposing undue time or money burdens. A few pages added to the voluminous document would remove the ambiguity that cripples the Supplemental Policy as currently constructed.

The District Court's order does not consider the possibility of an ambiguity in the policy language in question from the perspective of the hypothetical objectively reasonable insured as North Carolina law requires. The Order concludes the policy is unambiguous after noting the Supplemental Policy's purported exclusion, R&K's Certificate of Insurance, and the policy's North

18

Carolina endorsement. J.A. at 431. The Court goes on to note a way in which the Declarations could be read as "consistent" with other portions of the policy. Id. The District Court's ultimate conclusion that the policy is unambiguous was built on the Court's acceptance of Empire's interpretation of the Supplemental Policy.[2]

The Order speaks in detail of the policy's structure to serve a nationwide collection of Harley Davidson dealerships. J.A. at 424-26, 430. The Court discusses the "structure and organization of the policy" designed to accomplish Empire's nationwide coverage objective. J.A. at 430. The Court's acceptance of this "structure and organization" is the framework from which it reached its conclusion that all portions of the policy are consistent and that the Declarations cannot be read to provide UM coverage to an insured in the position of Mr. Kamp. Yet, Empire's intent to create a policy framework malleable to various states' laws is not the operative issue for interpreting the policy's language. Empire's belief that R&K's Certificate of Insurance, the North Carolina Endorsement, and the Supplemental Policy's language all work together to accomplish the insurer's goal of creating a nationally-applicable insurance system is likewise irrelevant.

---

[2] For example, part of the Court's reasoning for its ruling lies in the relationship between the Supplemental Policy language and the state-specific endorsements. The Court concluded that a North Carolina rentee is not entitled to UM coverage because the North Carolina endorsement "does not grant UM coverage back," a conclusion wholly premised on the notion that the policy language unambiguously excluded UM coverage. J.A. at 431. As discussed elsewhere in this section, this premise must fail because the policy language is ambiguous and the ambiguity must be construed to permit coverage.

To reach the conclusion that the policy was unambiguous as to UM coverage, the Court was not to determine whether the Declarations' language appearing to grant UM coverage could possibly be interpreted as consistent with other portions of the policy. Instead, the Court was to ask whether the policy in total, including the Declarations' language, was "susceptible" to being read by an objectively reasonable purchaser of insurance as granting UM coverage. Under North Carolina law, it is not enough that a Court or an insurer or an attorney or a seasoned insurance agent would understand Empire's objective in crafting the policy and would conclude the Declarations really meant to say that UM coverage is available only in those rare instances where a state-specific endorsement (contained in a different document) adds in such coverage.

North Carolina's objectively reasonable person is not a judge, attorney, or insurance agent. Instead, he/she is indubitably yet solely reasonable in terms of intelligence, business savvy, and understanding of complex insurance concepts. As many courts from other jurisdictions have stated, a reasonable insured is not held to the standard of a sophisticated legal or insurance industry official. An objectively reasonable person has a reasonable amount of knowledge on all matters. This person is a "reasonably prudent layperson." State Farm Mut. Auto Ins. Co. v. DeHaan, 900 A.2d 208, 226 (Md. 2006). Construing a life insurance policy, another court noted the need to stand in the shoes of a person "utterly

20

unacquainted with the niceties" of complex insurance concepts and who would read any policy "colloquially." <u>Simpson v. Prudential Ins. Co. of Am.</u>, 177 A.2d 417 (Md. 1962)(quoting <u>Gaunt v. John Hancock Mut. Life Ins. Co.</u>, 160 F.2d 599, 601 (2nd Cir. 1947)).

The reasonable person has only "the understanding of the average policyholder" and should not be assumed to understand subtleties an average person would not. <u>Cunningham v. Middle Ga. Mut. Life Ins. Co.</u>, 601 S.E.2d 382, 385 (Ga. App. 2004); <u>see also</u> <u>Ex parte United Servs. Auto Ass'n</u>, 614 S.E.2d 652, 654 (S.C. App. 2005)(construing policy term's "significance to the ordinary person"). In short, a policy must be read "as a lay person would read it rather than as it would be construed by an insurance expert or attorney." <u>Flynt v. Life of South Ins. Co.</u>, 718 S.E.2d 343, 347 (Ga. App. 2011).

### C. A reasonable insured could interpret the Supplemental Policy to include uninsured motorist coverage.

An objectively reasonable person in Mr. Kamp's position would have understood the coverage he purchased to include UM coverage. Customers appearing at R&K to rent a motorcycle were presented with a rental agreement listing rental fees, information about the rental vehicle, and a waiver of liability. J.A. 21-22; J.A. at 361, lines 21-25. The agreement also offered various insurance coverages a renter could agree to purchase by initialing the appropriate box and paying the required fee. Renters were offered personal accident and personal

21

property insurance as well as "supplemental liability insurance." J.A. at 21. Additional information about these additional coverages was available on the Declarations page. J.A. at 44.

An objectively reasonable person reviewing the Declarations page would see the specific losses against which personal accident coverage protects as well as the limits of coverage. Similarly, he would see that "Supplemental Rental Liability Insurance (SLI)" included "Bodily Injury and Property Damage Liability" coverage with a $1 million combined single limit and "Uninsured/Underinsured Motorist Coverage," also with a $1 million combined single limit. Id.

The hypothetical objectively reasonable man would see that the precise insurance coverage he selected by initialing the "Supplemental Liability Insurance" box on the Rental Agreement and purchased by paying the required fee is also listed on the policy's Declarations adjacent to the other coverages he purchased. The SLI he selected and purchased is reported by Empire's form to include UM coverage. This would be made all the more definite in the reasonable insured's mind since Empire went so far as to identify and record a policy limit for SLI's UM coverage. This reasonable insured is not required by law to understand Empire's "structure and organization" objective with its Supplemental Policy unless that structure and organization is reasonably clear to the reasonable insured from the language Empire chose to include.

22

The District Court failed to consider the Supplemental Policy from the reasonable insured's perspective. The Supplemental Policy's language is susceptible to being read as providing UM coverage to insureds in Mr. Kamp's position in an amount up to $1 million. Accordingly, the District Court erred in granting Empire summary judgment and its ruling should be reversed.

**D. Since a reasonable insured could interpret the Supplemental Policy to include uninsured motorist coverage, the Policy's purported uninsured motorist coverage exclusion must be construed against Empire.**

As discussed above, there is evidence in the record showing the Supplemental Policy is ambiguous regarding the availability of UM coverage for insureds like Mr. Kamp. The ambiguity becomes clear when an "ambiguous" insurance policy is properly understood as one that is reasonably susceptible to different interpretations as judged from the perspective of a reasonable person in the position of the insured. The Supplemental Policy's ambiguous coverage provisions must be interpreted in Mr. Kamp's favor to provide coverage. The Supplemental Policy's purported UM exclusion provision does not change the result because exclusionary clause are strictly construed and not applied in ambiguous policies like the Supplemental Policy.

The rules for construing insurance provisions purporting to exclude coverage are very different than the rules applied to provisions that grant coverage. <u>N.C. Farm Bureau Mut. Ins. Co. v. Stox</u>, 412 S.E.2d 318, 321 (N.C. 1992). The

Supplemental Policy's purported exclusion must be strictly construed while the Declarations' language granting UM coverage must be "construed liberally so as to afford coverage whenever possible by reasonable construction." Id. If a policy has "conflicting" provisions like the Supplemental Policy's UM exclusion and Declarations, then "the provision favorable to the insured should be held controlling." Drye v. Nationwide Mut. Ins. Co., 487 S.E.2d 148, 150 (N.C. App. 1997)(quoting Catawba Valley Machinery Co. v. Aetna Ins. Co., 185 S.E.2d 308, 311 (N.C. App. 1971)).

The strict construction mandate is not limited to ambiguous provisions. Since the insurer has chosen the policy's words, any ambiguity in the words or any "uncertainty as to their meaning" must be strictly construed and resolved in the insured's favor. Wachovia Bank & Trust Co., 172 S.E.2d at 522; see also Medical Mut. Ins. Co. of N.C. v. Am. Cas. Co. of Reading, Pa., 721 F. Supp. 2d 447, 452-53 (W.D.N.C. 2010)(quoting Gaston County Dyeing Mach. Co. v. Northfield Ins. Co., 524 S.E.2d 558 (N.C. 2000)(requiring pro-insured construction where "the meaning of the words or the effect of provisions is uncertain"); Joyner, 266 S.E.2d at 31 (noting same rule for "uncertain or equivocal" policy language). This rule of construction is a fundamental North Carolina insurance law principle succinctly stated in Crandell v. American Home Assurance Co., 644 S.E.2d 604, 606 (N.C. App. 2007), "Any doubt as to coverage must be resolved in favor of the insured."

In addition to the ambiguity created by its conflict with the Declarations' clear language, the purported exclusion is itself ambiguous, subject to multiple reasonable interpretations, and must be interpreted in Mr. Kamp's favor. The provision in question purports to exclude from coverage "Liability arising out of or benefits payable under any uninsured or underinsured motorist law, in any state." J.A. at 64. Empire asserts that this provision is an unqualified exclusion of any form of UM coverage. However, by its plain language, the exclusion is limited to UM coverage "arising out of" state law. This provision says nothing about UM coverage arising from sources other than a state's legal requirements, for example, UM coverage granted by the policy itself. Accordingly, the exclusion does not apply to Mr. Kamp's claim because his claim for UM coverage arises from the Supplemental Policy's Declarations. The District Court failed to construe this exclusion "strictly" to permit coverage where reasonably possible. The exclusion's language permits coverage for Mr. Kamp's claim and the District Court erred in granting Empire's motion.

## II.   NORTH CAROLINA'S MOTOR VEHICLE AND FINANCIAL RESPONSIBILITY ACT REQUIRES THE SUPPPLEMENTAL POLICY TO INCLUDE UNINSURED MOTORIST COVERAGE.

North Carolina's Motor Vehicle and Financial Responsibility Act was enacted in 1953 for the express purpose of "compensat[ing] the innocent victims of financially irresponsible motorists." Sutton v. Aetna Cas. & Sur. Co., 382 S.E.2d

25

759, 763 (N.C. 1989). As a remedial statute, the Act must be "liberally construed so that the beneficial purpose intended by its enactment may be accomplished." Id. (citing Moore v. Hartford Fire Ins. Co. Group, 155 S.E.2d 128, 130-31 (N.C. 1967)). Ensuring protection of innocent people injured by irresponsible and uninsured drivers is the Act's "primary purpose," and any interpretation of the Act's provisions should begin with this principle. Bray v. N.C. Farm Bureau Mut. Ins. Co., 462 S.E.2d 650, 684 (N.C. 1995).

The Act requires every "policy of bodily injury liability insurance" to provide coverage "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom." N.C.G.S. § 20-279.21(b)(3). The applicable limits for this mandatory UM coverage "shall be equal to the highest limits of bodily injury liability coverage" under the policy up to $1 million. Id. Accordingly, the Act makes UM coverage mandatory for every "motor vehicle liability policy" and the statute requires policy limits equal to the liability limits of the same policy. Where a statute directly applies to an insurance policy, the statutory provisions form a part of the policy. Moore, 155 S.E.2d at 135. If the policy's language conflicts with the statute, then the statutory provision controls. Id.

26

Even if the District Court's finding that the Supplemental Policy unambiguously excluded UM coverage is upheld, the Policy's language must be read to include the Act's mandatory UM coverage provision. Since the Policy provides $1 million in liability coverage, the Act requires the Policy to offer $1 million in UM coverage as well. Section 20-279.21(b)(3)'s mandatory coverage language is broad and must be interpreted in light of the Act's compensatory purpose. The intended meaning of "motor vehicle liability policy" covers a wide variety of insurance policies. As the North Carolina Rate Bureau[3] wrote to member insurers in 2008, the statute is designed "to make UM/UIM mandatory coverages on all policies that are not: (1) fleet policies; or policies issued on commercial vehicles."

Empire's Supplemental Policy falls within the Act's mandatory coverage provision. Even if the District Court's finding that the policy unambiguously excluded coverage is affirmed, North Carolina law requires the policy to include UM coverage and now requires the policy to be reformed to provide $1 million in UM coverage.

---

[3] The North Carolina Rate Bureau is an institution created by the North Carolina legislature to promulgate rates and perform other functions related to, among other things, "liability insurance for [nonfleet private passenger] motor vehicles…uninsured motorists coverage and other insurance coverages with the sale of such liability insurance." N.C.G.S. § 58-36-1(1).

27

## CONCLUSION

Based on the arguments stated above, Appellant respectfully requests an order reversing the District Court's order granting summary judgment to Respondent and dismissing Appellant's breach of contract and bad faith claims.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 34(a), Appellant requests oral argument in this matter. Due to the sharp disagreements between the parties on both the facts and law, Appellant believes oral argument will benefit the Court in clarifying and resolving the disputed issues.

s/ Ashley White Creech
Chad A. McGowan
Ashley White Creech
MCGOWAN, HOOD & FELDER, LLC
1539 Health Care Drive
Rock Hill, South Carolina 29732
803.327.7800
803.328.5656 (fax)
cmcgowan@mcgowanhood.com
acreech@mcgowanhood.com

Attorneys for Appellant Rolf Kamp

Rock Hill, South Carolina
August 12, 2013

28

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. _____       Caption: _____

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ ]    this brief contains _____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ]    this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ ]    this brief has been prepared in a proportionally spaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*]; **or**

[ ]    this brief has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s)_____

Attorney for_____

Dated:_____

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 12th day of August, 2013, I caused this Brief of Appellant and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> T. David Rheney
> Jennifer D. Eubanks
> Gallivan, White & Boyd, P.A.
> 55 Beattie Place, Suite. 1200
> P.O. Box 10589
> Greenville, SC 29603
> (864) 271-9580
>
> *Attorneys for Appellee Empire Fire & Marine Insurance Company*

I further certify that on this 12th day of August, 2013, I caused the required copies of the Brief of Appellant and Joint Appendix to be filed with the Clerk of Court.

> s/ Ashley White Creech
> Ashley White Creech
> McGowan, Hood & Felder, LLC
> 1539 Health Care Drive
> Rock Hill, SC 29732
> (803) 327-7800
> Attorney for Appellant Rolf Kamp